MISSOURI, K. & T. RY. CO. OF TEXAS v. ELLISON. (No. 1615.)

(Court of Civil Appeals of Texas. Texarkana. April 19, 1916. Rehearing Denied May 4, 1916.)

1. RELEASE ⊜⟶57(2) — IMPEACHMENT — EVIDENCE—SUFFICIENCY.

In a servant's action, where he impeached a release on the ground that he had been overreached, evidence *held* to support a finding that the release was invalid for fraud.

[Ed. Note.—For other cases, see Release, Cent. Dig. § 108; Dec. Dig. ⊜⟶57(2).]

2. MASTER AND SERVANT ⊜⟶279(4)—INJURIES TO SERVANT—NEGLIGENCE.

In an action by a freight conductor who was thrown from the train by a sudden start by the engineer, evidence *held* to warrant a finding that the engineer was guilty of negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 978; Dec. Dig. ⊜⟶279(4).]

3. APPEAL AND ERROR ⊜⟶1151(1)—VERDICT—CORRECTION.

In a servant's action, where he had been induced to execute a release, by the master's fraud, the charge on the measure of damages informed the jury that they should allow such a sum as would reasonably compensate for the servant's sufferings and permanent injuries, but that the sum already received as consideration for the release with interest should be deducted from any award. The jury awarded a lump sum as damages, and there was nothing to indicate whether it was for all the damages or for those damages for which the servant had not been compensated. *Held*, that as the charge did not directly require the jury to make the deduction, the court on appeal will treat their award as a general award, and from it deduct the amount of compensation already received, and enter the judgment that should have been entered below.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4499–4505; Dec. Dig. ⊜⟶ 1151(1).]

Appeal from District Court, Hunt County; A. P. Dohoney, Judge.

Action by D. C. Ellison against the Missouri, Kansas & Texas Railway Company of Texas. From a judgment for plaintiff, defendant appeals. Modified and affirmed.

Appellee, the conductor, was on top and near the end of a box car, for the purpose of directing the movements of a freight train which had been stopped or stalled on a heavy grade on the main line, and the locomotive was suddenly moved and gave the train a violent jerk, which threw appellee to the ground below, grievously injuring him. He brought the suit against the appellant company for damages for the injuries, alleging that the engineer operating the locomotive negligently moved the front end of the train without direction or signal to do so, and without warning, and with too great force. Appellant pleaded negligence of appellee as sole cause of injury, and contributory negligence and assumed risk. Appellant also pleaded payment and acceptance in full satisfaction of his injuries, and the execution of a formal release. Appellee, in avoidance of the release, replied that he was induced to make the settlement by false and fraudulent repre-

sentations made to him about his physical condition. After the train stalled on the grade the engineer whistled for the flagman to go back and protect the rear end of the train; and the appellee, after setting the caboose brake, got out of the caboose and on top of the car and walked forward to direct the head brakeman in respect to uncoupling the train. The conductor directed that the train be divided into two parts, so as to be able to ascend or make the grade in that way. The head brakeman was, according to directions, uncoupling the car, and the appellee, standing on top of the car, was looking down, telling the brakeman to set the air on the rear end so as to hold it on the grade; and there is evidence to support the finding that at this time the engineer, seeing appellee on the car, suddenly, and without warning or signal, moved forward part of the train with such force that it gave the train "a heavy lunge," throwing or jerking appellee down and causing him to fall from the train to the ground, grievously injuring him. Appellee was carried to the hospital at Sedalia, Mo., and treated for his injuries by appellant's surgeons there from May 21, 1913, to September 23, 1913. According to appellee's testimony, at the time of and the day before his discharge from the hospital he had a conversation with the surgeon and house surgeon about his condition, and they each told him that he was well and able to go to work, and "they wasn't able to find or discover any permanent injury to him." Appellee testified that he told the physicians that he had a weakness in the hip and left side, and the doctors told him he only needed exercise. It appears that appellee was given a sealed discharge letter, signed by the surgeon and addressed to the general claim agent. In accordance with instructions appellee delivered the discharge letter to the claim agent, and negotiations looking toward a settlement for the injuries began. The discharge letter stated that:

"Judging from his present condition, it will probably be—cannot tell—before he is able to resume his old employment."

According to appellee, the claim agent stated to him that he had talked with the hospital physicians, and that they had told him he was well and able to work. There is evidence that the appellant made it the duty of the surgeons to furnish to the claim department information as to the condition of injured men. Relying upon these statements of his physical condition, the appellee, as he says, made the settlement on September 30, 1913, for all injuries received by him. Appellee came back and worked for appellant for about half a month; and, because his physical condition grew worse, he was compelled to lay off. Since February 5, 1914, appellee, as shown, has been under constant treatment for permanent injuries. The verdict of the jury involves the findings of fact that appellee was overreached in the settle-

ment of September 30, 1913, and that the engineer was, as alleged, guilty of negligence proximately causing the injury in moving the engine suddenly and without warning or signal. As there is evidence to support these findings of the jury, such findings are here adopted.

C. C. Huff, of Dallas, and Dinsmore, McMahon & Dinsmore, of Greenville, for appellant. Yates, Sherrill & Starnes and Clark & Leddy, all of Greenville, for appellee.

LEVY, J. (after stating the facts as above). [1] Appellant contends by its third assignment of error that the requested peremptory instruction should have been given, because the evidence conclusively shows that the settlement made between appellee and appellant on September 30, 1913, was fairly and honestly made, without any fraud or deceit. Considering the entire testimony, it is believed that this court may not hold that, as a matter of law, there are no circumstances of overreaching shown in effecting the settlement, and for that reason the trial court properly passed the question to the jury for decision. Railway Co. v. Huyett, 49 Tex. Civ. App. 395, 108 S. W. 502; Railway Co. v. Reno, 146 S. W. 207; Railway Co. v. Brown, 69 S. W. 651. See principle, Railway Co. v. Jowers, 110 S. W. 946. And it is further concluded that this court may not properly disturb the finding, as involved in the verdict of the jury, that plaintiff had been overreached and induced to relinquish a claim for further compensation. French v. De Moss, 180 S. W. 1105. Therefore assignments of error numbered 4 and 5 are overruled.

[2] In the facts it is thought that the jury may find negligence on the part of the engineer, and that the verdict should not be overturned, and therefore assignment of error No. 6, contending that there is no negligence shown in the case, should be overruled.

[3] The court charged the jury as follows:

"If you find for the plaintiff, the measure of his damage will be such sum as will now in cash reasonably compensate him for the physical pain and mental anguish which he has suffered, if any, and such further sum as will now in cash reasonably compensate him for physical pain and mental anguish which he will reasonably and probably suffer in the future, if any, and for his diminished capacity to labor and earn money from the date of the injury to the time of the trial, if any; and if you find that his injuries, if any, are permanent, then you will allow him such further sum as will now in cash reasonably compensate him for his diminished capacity to labor and earn money in the future, if any. However, $1,320, the sum received by plaintiff from defendant, with 6 per cent. interest from date of payment, should be deducted from such sum, if any, that you may find."

The jury returned the following verdict:

"We, the jury, find for the plaintiff, and assess his damages at $7,500.00."

And the court refused the appellant's motion to enter judgment on the verdict of the jury in favor of the plaintiff for the difference between $1,320 and interest thereon and $7,500. Appellant contends, by proper assignment of error, that such ruling of the court was erroneous because the verdict of the jury was clearly a general finding only of the aggregate amount of the damages suffered by appellee, and was not a finding of only the difference found due after deducting the payment of the $1,320 and interest thereon. The verdict does not clearly show a finding of only the difference after deducting the payment, and it is thought that, under the circumstances of this particular case, it is more reasonable to assume that the jury did not, rather than that they did, intend to make the finding of only the difference after deducting the $1,320 and interest thereon. The charge of the court generally states to the jury that the deduction should be made, but it does not expressly say to them that they must do so. It may be that the jury could reasonably have interpreted the instruction as meaning that the court, and not the jury, should make the deduction. In this view, and considering the wording of the verdict, it is concluded that the verdict should be construed in this particular case as a general verdict only naming the amount of damages found due appellee. It is believed the court should have made the deduction and allowed judgment for the difference. This court may enter the judgment in this respect that the trial court should have entered. Therefore the judgment will be modified so as to allow recovery by appellee of the difference after deducting $1,320 and interest thereon at 6 per cent. per annum from September 30, 1913, from $7,500. Appellee will pay cost of appeal.

We have considered all the assignments not mentioned above, and think they should be overruled.

Modified and affirmed.